[Cite as *State v. Burns*, 2021-Ohio-1500.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-482 |
| | | (C.P.C. No 18CR-3118) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Gregory D. Burns, | : | |
| Defendant-Appellant. | : | |

## D E C I S I O N

Rendered on April 29, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sheryl L. Pritchard*, for appellee.

**On brief:** *Mark Hunt*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Gregory D. Burns, appeals the judgment of the Franklin County Court of Common Pleas. Burns was found guilty by a jury of several violent felonies and was ordered to serve a total sentence of ten years of incarceration.

{¶ 2} Burns and the victim, J.B., first began a relationship in 2004. They dated intermittently thereafter until their first child was born in November 2007, at which point the relationship deteriorated. In early 2008, J.B. obtained a five-year restraining order against Burns and moved into housing through Choices. Notwithstanding the order, at some point thereafter J.B. reconnected and reconciled with Burns—they had a second child together in December 2012 and married in March 2013.

{¶ 3} In March 2018, J.B. sought and obtained a new ex parte protection order against Burns, and in April 2018 she filed for divorce. A full protection order was granted on April 20, 2018, which required Burns to immediately vacate the marital residence. *See*

State's Ex. B at *2. Pursuant to the order, Burns was permitted to retrieve personal items from the residence "only in the company of a uniformed law enforcement officer within seven days of release from jail." *Id.* at *4.  J.B. testified at trial that she changed the locks to the house but that she forgot to change the code on the garage door.

{¶ 4}   On June 16, 2018, J.B. arranged for Burns to retrieve some mail from the back porch while she and the children were away.  But apparently Burns failed to pick up all of his mail, and instead, after J.B. and the children arrived back at the house, he sent a text to his children informing them that he would be stopping by to pick up the rest. He then arrived at the house and began visiting with the children through the door on the back porch. Upon seeing him, J.B. became agitated and told him to leave, and he appeared to do so. Approximately 45 minutes later, J.B. went out and sat on the back porch to smoke a cigarette, at which point Burns emerged from the garage and attacked her. Burns kneeled on her chest, chased her from the back porch into the house, jumped on top of her, hit her, grabbed her by the neck and covered her mouth and nose, and smacked the side of her head and ears.  J.B. managed to get Burns to calm down at one point and the two went outside to smoke.  But Burns became agitated again and returned to the kitchen, where he threatened J.B. with a kitchen knife.  Their six-year-old son witnessed this event and was present when Burns sliced her arm with the knife. J.B. testified that Burns then threatened her, took her cell phone, took her upstairs to the bedroom, and hit her with a small metal box that he recovered from underneath the bed before he finally left the residence.  In total the incident lasted four or five hours.

{¶ 5}   A Columbus Police officer and a paramedic arrived at the scene the following morning. The officer interviewed J.B. and photographed her injuries, and the paramedic examined her and determined that she should be transported to the emergency room for further evaluation. J.B. suffered a damaged cornea, a scar on her nose, and bruises on her ribs and shins.  As a result of the incident she required psychological therapy, was fearful to go into her garage or leave her house and missed almost 14 weeks of work.  Burns continued to contact her in the months following the event by sending her letters and made repeated requests to repair the relationship. *See* State's Exs. E1 and E2*.*

{¶ 6}   Burns was subsequently indicted and tried for felony charges of aggravated burglary, abduction, domestic violence, kidnapping, and violation of a protection order.

Prior to trial, the parties entered into several stipulations, including stipulating to the existence of a protection order, to prior convictions for attempted felonious assault involving a family or household member, to three prior instances of misdemeanor domestic violence, and a prior conviction for misdemeanor aggravated menacing involving a family or household member. After the close of the state's case, the defense made an "obligatory" motion pursuant to Crim.R. 29 "without further argument," *see* Tr. at 155, and thereafter chose to refrain from presenting a case. Closing arguments were presented, the jury was instructed, and Burns was found guilty of all counts.

{¶ 7} He has timely appealed, and now asserts three assignments of error, arguing that the trial court erred by denying his motion for acquittal, that the verdict is against the manifest weight of the evidence, and that the trial court erred in allowing the state to present limited evidence of other acts. We will address each assignment of error in turn.

**Assignment of Error 1:** The trial court erred when it denied defendant-appellant's R. 29 motion for acquittal.

{¶ 8} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus. The *Bridgeman* Crim.R. 29(A) standard is essentially identical to the standard for "sufficiency of the evidence" announced in *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, and "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id. following Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).

{¶ 9} Burns was charged with and found guilty of aggravated burglary, abduction, felony domestic violence, kidnapping, and violation of a protection order, although the trial court merged the abduction and kidnapping charges for sentencing purposes. Burns argues that there was insufficient evidence that he "knowingly * * * remov[ed] [J.B.] from the place where she was found, or restrain[ed her] of her liberty" as required to prove his guilt of kidnapping in violation of R.C. 2905.01, that there was insufficient proof that he "trespass[ed] in an occupied structure" as required to prove aggravated burglary in violation of R.C. 2911.11, that there was insufficient proof that he "knowingly cause[d] or

attempt[ed] to cause physical harm to a family or household member" as required to prove domestic violence in violation of R.C. 2919.25, and that there was insufficient evidence to prove that he "recklessly" violated a protection order as required to prove that charge under R.C. 2919.27.

{¶ 10} We disagree. Burns seems to contend that because J.B.'s testimony is the only evidence that he was the cause of her injuries that the state's case was insufficient. But under *Bridgeman* and *Jenks*, we review the evidence only to determine whether the state presented evidence upon which a reasonable person could rely in concluding that each essential element of the offense has been proven. Here, J.B.'s testimony alone provides firm evidence for each and every element of the five crimes. Burns' argument under this assignment of error essentially suggests that J.B. was not credible, but that is a determination for the finder of fact that goes to the weight of the case against him, not to its sufficiency. Accordingly, Burns' first assignment of error is meritless, and is overruled.

> **Assignment of Error 2:** The verdicts were against the manifest weight of the evidence.

{¶ 11} Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds*, and quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the

manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 12} Burns argues that J.B. admitted at trial that she voluntarily walked to the back porch and smoked a cigarette with him during the assault, that she failed to call 9-1-1, that she had a motive for bias which rendered her testimony unreliable, that the knife with which she was allegedly assaulted was never recovered or tested for evidence, and that the minor children who witnessed the incident were not interviewed and did not testify at trial. Defense counsel argued at trial that another unidentified person was responsible for J.B's injuries, but there was no evidence to suggest who that person might be. Despite all these arguments, the jury accepted J.B.'s testimony—based on her personal delivery of testimony, as well as the other corroborating evidence, the jury rejected Burns' argument that she was unreliable.

{¶ 13} In Burns' view, all of his arguments undermine the state's case to the extent that the evidence weighed heavily against his conviction. But upon a thorough review of the trial record, we conclude that Burns' conviction is not against the manifest weight of the evidence against him. It is the role of the jury to resolve the attack on J.B.'s credibility, and the jury rejected Burns' arguments and chose to believe her testimony and the other evidence presented in the state's case. Burns fails to show any basis for this court to conclude that the jury lost its way in making that choice. Therefore, his second assignment of error lacks merit and is overruled.

> **Assignment of Error 3**: The trial court abused its discretion in allowing the state to present evidence of other acts/crimes/convictions.

{¶ 14} In his third assignment, Burns argues that the trial court erred in allowing certain testimony from J.B. regarding the circumstances of the restraining order she obtained in 2008, prior to her marriage to Burns.

{¶ 15} As noted above, Burns stipulated to evidence regarding prior domestic assaults and the prior protection order. But in response to one of the state's questions, J.B. stated: "I got a five-year restraining order. I went and stayed at a women's shelter through Choices because I couldn't move back in with my mother. So [my older son], me and my six-month old baby, went and stayed at Choices a couple months." (Tr. at 19.) Burns' trial

counsel objected, and at a sidebar asserted that "we're getting into all kinds of 404(B) material." *Id.* at 20. Counsel argued that while the defense had stipulated to the existence of the prior convictions, "the circumstances surrounding them, where she was, has got nothing to do with the case." *Id*; *see also id.* at 20-24. Specifically, Burns' counsel argued that J.B.'s statements that she stayed at "a women's shelter through Choices * * * [for] a couple of months" were prejudicial. After argument at sidebar, the trial court ruled that "I will solve the question on Choices. She went to Choices. We're done." *Id.* at 24.

{¶ 16} Evid.R. 404(B) provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, the Supreme Court of Ohio reviewed the rule and adopted an interpretation provided by the United States Supreme Court in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644 (1997). *Creech* held that "when the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it * * * admits into evidence the full record of the prior judgment or indictment when the sole purpose of the evidence is to prove the element of the defendant's prior conviction or indictment." *Creech* at ¶ 40.

{¶ 17} Burns' argument in his third assignment of error is drawn from *Creech* and *Old Chief*—he contends that because the defense and the state had stipulated to the prior convictions, it was error for the trial court to permit the state to inquire about one of the preceding domestic violence incidents. As indicated, following a sidebar the trial court concluded that it would not strike the statements that J.B. and her children "went and stayed at women's shelter through Choices" but directed the state to refrain from delving any further into the circumstances or results of Burn's prior domestic violence incidents.

{¶ 18} The trial court's ruling is sound. J.B.'s fleeting reference to staying at a women's shelter, without more, is not so prejudicial to Burns' case that the trial court's decision not to strike the reference rises to the level of reversible error. The jury was already aware based on the stipulated judgment entries that Burns had been convicted of domestic violence out of the 2008 incident, there is no testimony describing the specific acts that supported that conviction, and the state abandoned its line of questioning regarding the incident once the trial court issued its sidebar ruling. At worst, the stray statement is

duplicative of the properly admitted evidence that J.B. had obtained a protection order. Burns has not clearly established how the admission of J.B.'s statement is error under the principles of *Creech* and *Old Chief*, but even if we assume that the admission of the testimony was error, that error was undoubtedly harmless. Burns' third assignment is meritless.

{¶ 19} For all these reasons, we overrule all three of Burns' assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

——————————